1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   JAMES EDWARD STANFIELD, SR.,          CASE NO. 1:07-cv-01786-OWW-YNP PC

10                    Plaintiff,          FINDINGS AND RECOMMENDATIONS

11        v.                              (Doc. 26)

12   STEVEN CALLAWAY, et al.,             OBJECTIONS DUE WITHIN 30 DAYS

13                    Defendants.
                                   /
14

15        Plaintiff James Edward Stanfield, Sr. ("Plaintiff") is a state prisoner proceeding pro se and

16   in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Defendants Woolkfolk

17   and Callaway[1] have filed a motion to dismiss based on Plaintiff's failure to exhaust his

18   administrative remedies prior to filing suit and Plaintiff's failure to state a claim.  Defendants filed

19   their motion to dismiss on July 10, 2009.  (Doc. #26.)  Plaintiff filed an opposition on October 9,

20   2009.  (Doc. #36.)  This action is proceeding on Plaintiff's complaint filed on December 10, 2007.

21   (Doc. #1.)  For the reasons set forth below, the Court finds that Plaintiff failed to exhaust his

22   administrative remedies prior to filing suit and recommends that Defendants' motion to dismiss be

23   granted.

24   ///

25   ///

26   ///

27
28
        [1]Defendants Garcia and Casimiro have not yet been served.

1

1   **I.   Defendants' Motion to Dismiss**

2        Defendants' argue in their motion to dismiss that they are entitled to dismissal because

3   Plaintiff has failed to state a claim and Plaintiff failed to exhaust the administrative appeals process

4   prior to filing this lawsuit.  (Defs.' Notice of Mot. And Mot. To Dismiss Compl. 1:21-24.)

5        Plaintiff's complaint claims that Defendants Woolfolk, Garcia, Callaway, and Casimiro

6   violated his rights under the Eighth Amendment by deliberately exposing Plaintiff to a risk of serious

7   injury by providing Plaintiff his medication (Seroquel) in crushed form, which caused Plaintiff to

8   blackout and injure himself.  Plaintiff also claims that Woolfolk retaliated against Plaintiff's exercise

9   of his First Amendment rights by deliberately crushing Plaintiff's Seroquel after Plaintiff filed

10  inmate grievances against her.  The Court previously screened Plaintiff's complaint pursuant to 28

11  U.S.C. § 1915A(a) and found that Plaintiff's allegations were sufficient under Federal Rule of Civil

12  Procedure 12(b)(6) standards to support cognizable claims against Defendants Woolfolk, Garcia,

13  Callaway, and Casimiro for the violation of his Eighth Amendment rights, and against Defendant

14  Woolfolk for retaliation.   (Order Requiring Pl. To File Am. Compl. Or to Notify Court of

15  Willingness to Proceed Only on Claims Found to be Cognizable 6:13-15.)

16       Defendants argue that Plaintiff's allegations do not support cognizable claims against

17  Defendants Woolfolk or Callaway.  Defendants contend that Plaintiff has not alleged that he suffered

18  physical injury on any of the occasions that he was given crushed Seroquel by Defendants Woolfolk

19  or Callaway.  (P. & A. In Supp. Of Mot. To Dismiss Compl. 7:1-2.)  Defendants contend that

20  inmates are barred from seeking compensatory damages for mental or emotional damages unless they

21  show physical injury. (P. & A. 6:24-25.)  Defendants also argue that Plaintiff has failed to allege that

22  Defendants acted with deliberate indifference.  (P. & A. 7:4-19.)  Defendants contend that because

23  Defendants were ordered by the Associate Warden and the Chief Psychiatrist to administer Seroquel

24  in crushed form, Defendants lack the requisite subjective state of mind necessary to state a claim

25  under the Eighth Amendment or for retaliation.  (P. & A. 7:15-19.)

26       Defendants also argue that they are entitled to dismissal because Plaintiff failed to exhaust

27  his administrative remedies by pursing his inmate appeal to the third level of review.  (P. & A. 3:16-

28  6:20.)  Defendants note that Plaintiff is required under the Prison Litigation Reform Act ("PLRA")

to exhaust his administrative remedies prior to filing suit. (P. & A. 3:26-4:1.)  Defendants contend that Plaintiff only pursued his inmate appeal to the informal level of review.  (P. & A. 5:3-4.)  Although Plaintiff's appeal was granted at the informal level, the problem was not resolved at the informal level because the licensed vocational nurses continued to crush Plaintiff's medication.  (P. & A. 5:16-18.)  Defendants argue that Plaintiff should have continued to pursue his appeal.  (P. & A. 5:18-19.)  Defendants further contend that Plaintiff's complaint arose from a conflict between the orders of the doctors and the orders of the administrators.  (P. & A. 5:5-6.)  Defendants argue that if Plaintiff had pursued his inmate appeal to the second level of review, the issue of the conflicting orders would have been brought to the attention of the administration and the problem could have been solved.  (P. & A. 5:6-8.)  Defendants note that several remedies were still available to Plaintiff through the appeals process, such as an apology, medical personnel training, and the changing of rules or regulations.  (P. & A. 5:11-13.)

        In his opposition, Plaintiff argues that his administrative remedies should be deemed exhausted.  Plaintiff argues that his appeal was fully granted at the lower level and Plaintiff should not be required to continue to pursue his appeal after it has been fully granted.  (Pl. Notice of Mot. Opposing Defs.' Mot. To Dismiss Compl. 1.)  Plaintiff alleges that two doctors granted Plaintiff's inmate appeal at the informal level and agreed that Plaintiff's Seroquel should not be crushed.  (Mot. Opposing Mot. To Dismiss 1.)

## II.    Discussion

### A.    Failure to Exhaust

        Defendants argue that they are entitled to dismissal because Plaintiff failed to exhaust his administrative remedies.  Plaintiff is required to exhaust any administrative remedies available to him before bringing suit.  "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA exhaustion requirement requires proper exhaustion.  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . ."  Id. at 90-91.  The proper exhaustion requirement serves two important

3

1   purposes: 1) it gives an agency the opportunity to correct its own mistakes before it is brought into

2   federal court and it discourages disregard of the agency's procedures; and 2) it promotes efficiency

3   because claims can be resolved much more quickly and economically in proceedings before an

4   agency than in litigation in federal court. Id. at 89.

5          Prisoners are required to exhaust their administrative remedies regardless of what relief is

6   offered through the administrative procedures. Booth v. Churner, 532 U.S. 731, 741 (2001). Thus,

7   prisoners cannot evade the exhaustion requirement by limiting their request for relief to forms of

8   relief that are not offered through administrative grievance mechanisms. Id. (prisoners cannot skip

9   administrative process by simply limiting prayers for relief to money damages not offered through

10  administrative grievance mechanisms). Thus, prisoners may not cease pursuing administrative

11  appeals simply because the appeal process does not offer the form of relief that they seek. If the

12  administrative appeal process offers any form of relief, the prisoner is obligated to complete the

13  appeal process. At the same time, "a prisoner need not press on to exhaust further levels of review

14  once he has either received all 'available' remedies at an intermediate level of review or been reliably

15  informed by an administrator that no remedies are available." Brown v. Valoff, 422 F.3d 926 (9th

16  Cir. 2005).

17         Defendants argue that Plaintiff did not comply with the California Department of Corrections

18  and Rehabilitation's critical procedural rules. Defendants allege that proper exhaustion of

19  administrative remedies requires prisoners to proceed through several levels of appeal, culminating

20  in the third level appeal to the Director of the California Department of Corrections. (P. & A. 4:11-

21  16.) Plaintiff only pursued his appeal to the informal level of review. Plaintiff argues that his

22  informal level appeal requested that the prison refrain from crushing his Seroquel. Plaintiff's

23  informal level appeal was granted and Plaintiff argues that he is not obligated to pursue his appeal

24  further. Defendants concede that Plaintiff's appeal was granted, but argue that the nurses continued

25  to crush Plaintiff's Seroquel, meaning the problem was not resolved and Plaintiff should have

26  pursued higher levels of appeal.

27  ///

28  ///

4

### 1.   Claims Premised on Post-October 28, 2007 Incidents

Plaintiff asserts claims based on incidents that occurred after he filed his administrative appeal complaining about crushed Seroquel.  At issue is whether the informal level grievance that Plaintiff filed on October 28, 2007 can be said to have exhausted Plaintiff's administrative remedies for the incidents where Plaintiff was given crushed Seroquel after October 28, 2007.  The situation here is analogous to the facts in Griffin v. Arpaio, 557 F.3d 1117 (9th Cir. 2009).  In Griffin, the prisoner took prescription drugs which impaired his vision, making it difficult to access upper bunks.  Id. at 1118.  On one occasion, Griffin fell trying access an upper bunk.  Id.  Griffin filed a grievance form requesting a ladder or step to help him access his upper bunk.  Id.  While the grievance was pending, Griffin obtained an order for a lower bunk assignment from a prison nurse.  Id. at 1118-19.  The prison officials responding to Griffin's grievance stated that the nurse's order resolved his problem.  Id. at 1119.  However, prison staff disregarded the nurse's order and Griffin never received a lower bunk.  Id.  Griffin filed more appeals, but the appeals did not mention that prison staff were disregarding his lower bunk assignment.  Id.  Thus, the prison officials responding to Griffin's appeals determined that the lower bunk assignment addressed his problem and obviated further action.  Id.  The Ninth Circuit held that Griffin failed to exhaust properly because "[h]e did not provide notice of the prison staff's alleged disregard of his lower bunk assignments."  Id. at 1121.  Thus, "[h]is grievance did not 'provide enough information . . . to allow prison officials to take appropriate responsive measures.'"  Id. (quoting Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004)).

Plaintiff filed his informal appeal on October 28, 2007.  (Compl. 9.)  In response to the informal appeal, Plaintiff received a doctor's order that ordered the prison's medical staff to stop crushing Plaintiff's Seroquel.  However, Plaintiff's Seroquel continued to be crushed.  Plaintiff's October 28, 2007 informal appeal cannot be said to have exhausted his administrative remedies for incidents that occurred after October 28, 2007.  Plaintiff never informed prison officials through the administrative grievance procedure that Defendants continued to ignore the doctor's orders/informal appeal response after October 28, 2007.  There continued to be available remedies at the time Plaintiff filed suit for his claims based on the incidents that occurred after October 28, 2007.  The

5

Plaintiff in <u>Griffin</u> failed to exhaust because even though he continued to file grievances, he did not mention in his grievance that his lower bunk assignment was being ignored.  Plaintiff has made even less effort to utilize the grievance system because unlike the Plaintiff in <u>Griffin</u>, Plaintiff did not continue to file grievances after his doctor's order was being ignored.  Thus, Plaintiff has not exhausted his administrative remedies with respect to the incidents that occurred after October 28, 2007.  Plaintiff's claims regarding the incidents that occurred after October 28, 2007 will be dismissed without prejudice.

### 2.   Claims Premised on Pre-October 28, 2007 Incidents

Having determined that Plaintiff failed to exhaust his administrative remedies for his claims based on post-October 28, 2007 Seroquel crushing incidents, only one incident remains.  Plaintiff alleges that on October 23, 2007, Defendant Woolfolk asked the head psychiatrist to order Plaintiff's Seroquel crushed "as a reprisal for [Plaintiff] filing a[n inmate grievance against] her for misconduct." (Compl. 6.)  The issue now is whether Plaintiff's October 28, 2007 informal grievance exhausted his administrative remedies with respect to that claim.

Plaintiff argues that he exhausted because no further relief was available.  Plaintiff requested that his Seroquel not be crushed and his request was granted.  Defendants argue that further relief was available because his Seroquel continued to be crushed.  The Ninth Circuit has indicated that exhaustion requires a prisoner to wait for the outcome of relief already granted by the grievance process before filing suit.  The Ninth Circuit recognized that the purpose of the exhaustion requirement is to give prison officials the time and the opportunity to address complaints internally before allowing the initiation of a federal lawsuit.  <u>Brown v. Valoff</u>, 422 F.3d 926, 936 (9th Cir. 2005).  "[T]he purposes [of the exhaustion requirement] can be served by relief accorded outside the usual grievance process, so that awaiting the results of investigations triggered by the grievance process but outside of it can serve the purposes of the exhaustion requirement."  <u>Id.</u>  "[T]here can be no 'absence of exhaustion' unless <u>some</u> relief remains 'available' . . . whether at unexhausted levels of the grievance process <u>or through awaiting the results of the relief already granted as a result of that process</u>.  <u>Id.</u> at 936-937 (emphasis added).  Thus, remedies are still "available" if waiting for

///

1  the results of relief granted by the grievance process can serve the purpose of the exhaustion

2  requirement.

3         Here, Plaintiff's informal grievance was granted.  Had Plaintiff immediately filed suit after

4  his grievance was granted, Plaintiff may have a valid claim for exhaustion.  However, Plaintiff

5  waited for the relief to be effectuated and discovered that the nurses were ignoring the doctor's order

6  he received when his informal grievance was granted.  Thus, it was apparent to Plaintiff that further

7  relief remained available because he could have pursued higher levels of appeal and notified higher

8  prison administrators of his complaint.  Plaintiff fails to provide any reasonable explanation why he

9  declined to pursue the administrative appeal process when he knew that nurses were ignoring the

10  informal grievance and continued to crush his Seroquel.  The purpose of the exhaustion requirement

11  would be furthered by requiring Plaintiff to wait because it would have given prison officials the

12  opportunity to address Plaintiff's complaint internally.  Defendants point out that had Plaintiff

13  pressed on with his appeal, the issue would have been brought to the attention of prison

14  administrators and the problem would have been solved--Defendants characterize the issue as a mis-

15  communication between the doctors and the prison administrators.  Plaintiff initiated this lawsuit on

16  December 10, 2007.  Plaintiff knew on December 10, 2007 that his Seroquel was still being crushed

17  and the administrative appeal system still offered Plaintiff an opportunity to obtain relief, such as

18  administrative intervention, if Plaintiff chose to pursue higher levels of appeal.  Thus, remedies were

19  still "available" to Plaintiff and Plaintiff has failed to exhaust his "available" remedies.

20         **B.      Failure to State a Claim and Failure to Allege Physical Injury**

21         Defendants argue that they are entitled to dismissal on the alternative basis that Plaintiff fails

22  to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Defendants also argue that Plaintiff

23  failed to allege actual physical injury, as required by 42 U.S.C. § 1997e(e).  Because the Court finds

24  that Defendants are entitled to dismissal based on Plaintiff's failure to exhaust, the Court declines

25  to address Defendants' other arguments.

26  ///

27  ///

28  ///

7

1

### III.     Conclusion and Recommendation

2

The Court finds that Plaintiff did not exhaust all available administrative remedies when he

3

filed this lawsuit.  Thus, the Court finds that Defendants Woolfolk and Callaway are entitled to

4

dismissal based on Plaintiff's failure to fulfill the exhaustion requirement of the PLRA.

5

Accordingly, it is HEREBY RECOMMENDED that Defendants' motion to dismiss, filed

6

on July 10, 2009, be GRANTED.

7

These Findings and Recommendations will be submitted to the United States District Judge

8

assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **thirty (30)**

9

**days** after being served with these Findings and Recommendations, the parties may file written

10

objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

11

Findings and Recommendations."  The parties are advised that failure to file objections within the

12

specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d

13

1153 (9th Cir. 1991).

14

15

IT IS SO ORDERED.

16

**Dated:     January 14, 2010**                     **/s/ Sandra M. Snyder**

17

UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28